UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

S.R.P. (XXX-XX-8720)                    CIVIL ACTION NO. 20-cv-1523

VERSUS                                  JUDGE TERRY A. DOUGHTY

COMMISSIONER OF SOCIAL SECURITY         MAGISTRATE JUDGE HORNSBY
ADMINISTRATION

## REPORT AND RECOMMENDATION

**Introduction**

S.R.P. ("Plaintiff") was born in 1977. She has a high school education and work experience as a fast food manager, bank teller, and auction clerk. She stopped working in 2015 due to pain in her arm and shoulder, weakness, and loss of balance. Plaintiff filed an application for disability benefits and supplemental security income.

ALJ Charlotte Wright held a hearing and issued a written decision. She found that Plaintiff was not disabled within the meaning of the law. The Appeals Council denied a request for review, which made the ALJ's decision the Commissioner's final agency decision. Plaintiff then filed this civil action to seek review under 42 U.S.C. § 405(g).

Plaintiff's principal argument on appeal is that the ALJ did not include multiple sclerosis ("MS") in the list of her severe impairments at step two of the five-step analysis. The Commissioner concedes that MS should have been included on the list of severe impairments but argues that the mistake was harmless because the ALJ's other findings accounted for all of Plaintiff's limitations, including those caused by MS. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

**Relevant Evidence**

    **A. Hearing Testimony**

Plaintiff, represented by counsel, testified at a telephonic hearing before the ALJ on May 7, 2020. Plaintiff testified that in 2015 she worked two jobs as an assistant pizza restaurant manager and as an assistant auctioneer. She stopped working in May 2015 because she has stabbing pain in her right arm when she tries to move it or lift it above shoulder level. She cannot lift more than five pounds. She also said that she was "weak all the time" and loses her balance. Tr. 68.

Plaintiff testified that she uses a cane on a regular basis. She can go very short distances without it, but if she is walking for more than a few feet, she needs the cane for balance. She said that she can sit for only 30 to 45 minutes before she has to change positions, and she can stand for only 20 to 30 minutes at a time. With her cane, she can walk 50 to 60 feet before she has to stop. She can carry three to four pounds with her right arm and ten pounds with her left. She cannot stoop or crouch and does not think she can get on her knees to kneel or crawl. Tr. 70-71.

Plaintiff testified that she no longer does household chores. She does not grocery shop very often, does not participate in any hobbies, and does not take care of any pets. Tr. 73. Plaintiff had surgery on her right elbow and has worn a compression sleeve on her elbow since then. She testified that, since the surgery, one side of her arm stays numb and she is "constantly aching." Tr. 75.

Plaintiff receives infusions for MS every six months. She is given Benadryl along with the infusion and afterwards is "wiped out." Tr. 74. Because of the MS, she is "very

clumsy." Tr. 75. She said that she drops things all the time. She also gets cramps in her legs from her knees to her toes. She described the cramps as "burning, almost like a charley horse" and said that her legs "cramp up and won't let go." She gets 20 or more episodes of cramps a month. Tr. 76. She stated that if she tried to bend over, she would probably fall. She is "always fatigued and tired" and is not able to sleep for long periods of time. Tr. 77.

Vocational expert Wilfred Roux testified at the hearing. He first stated that Plaintiff's past work would be light work under the regulations. The ALJ asked the VE about a hypothetical individual with Plaintiff's age, education, and work experience who can perform the limited range of sedentary work reflected in the ALJ's findings of Plaintiff's residual functional capacity ("RFC"). Roux testified that such an individual could perform the sedentary jobs of addressing clerk, charge account clerk, and telephone order clerk. However, if the use of a hand fingering, reaching, grasping, and handling is limited to only occasional, that would eliminate all of the job possibilities he previously identified, but the individual could still work as a surveillance systems monitor. If the individual was off task for 15% of the workday or if the individual was absent twice monthly, then all competitive employment would be eliminated. Tr. 79-82.

**B. Medical Records**

In July 2018, an MRI was performed on Plaintiff that revealed lesions in her upper thoracic cord. Tr. 391. In November 2018, neurologist Dr. Megan Harris diagnosed Plaintiff with MS in light of the MRI and because Plaintiff was experiencing MS-like symptoms. Dr. Harris ordered a brain MRI and noted that a lumbar puncture may be

necessary. Tr. 434. The brain MRI showed no abnormalities in the brain. Tr. 627. The lumbar puncture, performed in March 2019, was consistent with MS. Tr. 618. Dr. Harris referred Plaintiff to LSU for treatment of MS, and Plaintiff began receiving Ocrevus infusions in September 2019. Tr. 650-51.

The last treatment note in Plaintiff's record is a January 2020 progress note from Dr. Erik Von Burton at LSU. It noted her symptoms of "intractable fatigue," bilateral weakness and cramps/spasms, presyncope, and parasthesia in the left leg. Tr. 747. The report stated that Plaintiff was positive for weakness, numbness, and decreased concentration. Tr. 748. In the physical examination, Plaintiff was noted to have normal strength, gait, reflexes, concentration, and coordination. Tr. 748.

**Summary of the Commissioner's Decision**

    **A. The Five-Step Analysis**

The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. The regulations set forth a five-step sequential analysis, on which the claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. The steps are (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the

claimant from performing any other substantial gainful activity. Salmond v. Berryhill, 892 F.3d 812, 817 (5th Cir. 2018); Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).

### B. The ALJ's Findings

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 28, 2018. At step two, she found that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis, and a history of right elbow surgery with postsurgical changes. The ALJ did not list multiple sclerosis among Plaintiff's severe impairments. The ALJ considered Plaintiff's complaints of poor concentration, memory deficits, and a low stress tolerance, but found that Plaintiff had no medically determinable mental impairment. In support, the ALJ noted a lack of mental health care in Plaintiff's history, and she referred to the report of a consultative psychologist that did not diagnose any mental health condition. At step three, the ALJ found that none of the severe impairments were so limiting as to meet or equal a listed impairment, which Plaintiff does not challenge on appeal.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC"), which is the most a claimant can still do despite her limitations. Kneeland v. Berryhill, 850 F.3d 749, 754 (5th Cir. 2017). The ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work, which is the least demanding classification of work.[1] She found that

---

[1] The full range of sedentary involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties. A job is sedentary if walking and standing are required occasionally (up to a total of 2 hours per workday) and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a); Social Security Ruling 83-10.

Plaintiff could lift no more than 10 pounds, sit for up to six hours during an eight-hour workday, and walk and stand intermittently for up to two hours in an eight-hour workday. Plaintiff's ability to work was further restricted by the ability to reach overhead with her right arm only occasionally. Plaintiff can only occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl. She can never climb ladders, ropes, or scaffolds, and she must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery. Plaintiff requires a cane for ambulation.

Plaintiff's past work as a fast food manager, bank teller, and auction clerk was performed at a higher strength demand level that is precluded by Plaintiff's RFC, so the ALJ found at step four that Plaintiff was not able to perform her past relevant work. The vocational expert testified that a person with Plaintiff's RFC and other factors could perform the demands of addressing clerk, charge account clerk, or telephone order clerk (all sedentary jobs). The ALJ accepted that testimony and found at step five that Plaintiff was not disabled within the meaning of the law.

**Assignment of Errors**

Plaintiff argues that the Commissioner's decision was erroneous because: (1) the Commissioner did not consider all of the evidence in Plaintiff's case record, (2) the Commissioner did not consider all of the available evidence about how Plaintiff's symptoms affect her and did not evaluate the intensity and persistence of her symptoms, and (3) the Commissioner failed to assess Plaintiff's RFC based on all of the relevant evidence. The listed errors are general, but the argument in support of each of them is

based on the ALJ's omission of MS from the list of severe impairments and its purported effect on the decision.

**Standard of Review; Substantial Evidence**

This court's review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

Plaintiff argues that the Commissioner erred by (1) failing to list MS as a severe impairment and (2) not considering all of the evidence regarding the intensity and persistence of her MS symptoms. The Commissioner responds that the omission of MS as a severe impairment was an error, but it does not warrant reversal because the ALJ's determination of Plaintiff's RFC included acknowledgment of her MS and limitations attributable to MS.

Step two asks whether the claimant suffers from a severe impairment within the meaning of the regulations. The Fifth Circuit has interpreted the regulations to mean that

an impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985). "This second step requires the claimant to make a *de minimis* showing." Salmond v. Berryhill, 892 F.3d 812, 817 (5th Cir. 2018).

If any severe impairment is found at step two, the analysis proceeds. At the later stages of the analysis, the ALJ must consider all impairments, even those that are not severe. See, e.g., 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' … when we assess your residual functional capacity.") and § 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.").

Plaintiff argues that the ALJ should have included MS among her step-two severe impairments, and the Commissioner agrees. But that does not mean that reversal and remand are necessarily warranted. This case did not turn on a finding that Plaintiff lacked a step-two severe impairment; rather, the ALJ concluded at step five that Plaintiff was not disabled because, despite her severe and other impairments, she retained the RFC to do other work. It has been held, in similar cases, that the ALJ's failure to properly assess the severity of a particular impairment at step two was not a basis for remand. See Adams v. Bowen, 833 F.2d 509, 512 (5th Cir.1987) (ALJ's failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis); Herrera v. Comm'r of Soc. Sec., 406 Fed. Appx. 899, 903 (5th Cir. 2010) (same).

"[I]f the ALJ proceeds past step two, we consider whether the error was harmless." Keel v. Saul, 986 F.3d 551, 556 (5th Cir. 2021). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." Id. And the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. Id. at 557. In this case, the burden of showing harm in the error falls on Plaintiff.

The ALJ may have omitted MS from the list of severe impairments, but she did not overlook its effect on Plaintiff's limitations. In the assessment of Plaintiff's RFC, between steps three and four, the ALJ noted that a July 2018 imaging report showed that Plaintiff had a "nerve defect in her cervical spine that likely indicated she had multiple sclerosis." Tr. 20. She cited a later MRI of the brain that "showed no signs of multiple sclerosis or other brain abnormality." Tr. 20. That does not mean the ALJ discounted MS; she merely observed that the brain scan did not show signs, while stating that the spinal scan did show signs.

Later in the decision, the ALJ clearly recognized the MS diagnosis: "By the time of a January 2020 examination, the claimant had diagnoses of multiple sclerosis, gait dysfunction, and lumbar radiculopathy." Tr. 21. But the mere diagnoses of a medical condition does not equal disability. The issue is what limitations on the ability to work does the condition cause this claimant. After noting the MS diagnosis, the ALJ said, "Nonetheless, her resultant physical examination was unremarkable." Tr. 21. The ALJ rejected the findings of state agency medical consultants that Plaintiff could lift and carry

up to 20 pounds occasionally and walk/stand up to four hours per day, and she assessed an ability to perform a very limited range of sedentary work.

Plaintiff argues that the ALJ's decision did not address her symptoms and resulting limitations that are specific to MS. Plaintiff states that MS produced symptoms that differ from her other severe impairments. Specifically, Plaintiff points to her symptoms of gait dysfunction, phasic spasticity, decreased sensation in her right arm, intractable fatigue, cognitive complaints, intermittent left leg parasthesia, inability to hold things in her right hand, clumsiness and falls, focal weakness, numbness, leg cramps and spasms, right sided weakness, cold sensation in right arm, and presyncope. Plaintiff states that these symptoms were recorded consistently throughout the record. (Tr. 33, 35, 398, 402, 403, 411, 414, 415, 423, 426, 434, 436, 439, 483, 485, 487, 490, 499, 503, 505, 512, 519, 525, 580, 582, 584, 650, 652, 653, 660, 661, 685, 687, 688, 691, 694, 695, 748). Plaintiff argues that none of these symptoms were addressed and that the discussion was confined to Plaintiff's orthopedic symptoms such as elbow pain, antalgic gait, and right elbow sensitivity.

The ALJ conducted a detailed assessment of the RFC limitations that specifically considered the impact of MS. She wrote:

> The restrictions in the residual functional capacity recognize that the claimant's back impairment, elbow impairment, and **multiple sclerosis** all cause the claimant to walk an antalgic gait, to have pain throughout her elbows, back, and lower extremity, and to have limited ranges of motion throughout her spine that would make it difficult for her to bear weight. She consistently walked with an abnormal gait and used an assistive device throughout the record to establish her ability to stand and walk for up to two hours in the workday and to require the use of a cane for ambulation. The diminished reflexes in her lower extremities support the restriction that she must avoid concentrated exposure to hazards like unprotected heights and dangerous moving machinery. The limited ranges of motion in her spine

> support the restriction that she can perform various postural activities on no more than an occasional basis. Her right elbow and its hypersensitivity support the restriction on her occasional overhead reaching and her lifting and carrying objects at the sedentary exertional level.

The ALJ went on to provide a paragraph of explanation as to whey she rejected more limiting restrictions, such as the need to change positions throughout the workday, be absent from work, or require additional break periods. Tr. 21.

Plaintiff argues that this is not enough because the ALJ did not specifically discuss each of her complaints of symptoms that could be caused by MS. "An ALJ's findings must be comprehensive and analytical, although they do not have to discuss every piece of evidence or articulate every thought process, as long as a minimal level of articulation is met and the ALJ provides a 'logical bridge' between the evidence and the conclusions reached." 4 Soc. Sec. Law & Prac. § 53:11. The decision in this case is more detailed than most in its reasoning, and it fairly assessed the significant and probative evidence in a manner that allows the court to conduct a meaningful review.

Most important, the ALJ found limitations on the ability to work that fairly reflect the limitations that Plaintiff argues are caused by her MS. Gait issues were found to reduce her ability to stand/walk more than two hours per day, and the need for a cane was recognized. Right arm problems were addressed by finding Plaintiff had limitations on her ability to reach overhead with that arm or carry objects weighing more than 10 pounds. Unsteadiness or clumsiness was addressed by limiting Plaintiff to no work around unprotected heights or dangerous moving machinery.

There is no dispute that Plaintiff suffers from MS and that it causes her serious limitations in the ability to perform work activities. The ALJ may have omitted MS from the list of impairments at step two, but she specifically and substantively incorporated into Plaintiff's RFC those limitations that the ALJ found were caused by MS and other health problems. Plaintiff bears the burden of showing that the step-two error was harmful in this case. After a review of the otherwise well-reasoned ALJ decision, the evidence, and the arguments of counsel, the undersigned finds that the ALJ would not have reached a different conclusion even if she had included MS as a step-two severe impairment. The ALJ's findings are supported by substantial evidence.

Accordingly, It is recommended that the Commissioner's decision be affirmed.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of January, 2022.

Mark L. Hornsby
U.S. Magistrate Judge